## A90A2113. HOLMAN v. BURGESS.
(404 SE2d 144)

BANKE, Presiding Judge.

The appellee sued the appellant, her former landlord, seeking to recover "general and special damages" in the amount of $250,000 plus punitive damages in the amount of $500,000, based on allegations that he had trespassed on the rented premises and converted or destroyed certain items of personal property belonging to her. In connection with her claim for punitive damages, the appellee served the appellant with a request for production of certain financial records relating to his worldly circumstances, including the following: All of his income tax returns filed from 1986 through 1989, either individually or jointly with others; paycheck stubs or other documents showing his income employment from 1986 to the present; records of any bank checking and savings accounts maintained by him either individually or jointly with others; all records evidencing his ownership of property interests, either individually or jointly with others, "including reversionary interests, notes, corporate agreements, partnership agreements, profit sharing statements, pension plan statements and savings account passbooks"; any warranty deeds, quitclaim deeds and security deeds naming him as grantee or grantor, individually or jointly with others, with respect to any property in which he had any interest or equity; all automobile tag registration certificates naming him as owner, either individually or jointly with others; all stock certificates, bond certificates, and mutual fund certificates "and any other evidence of ownership of any interest in any corporation, fund or trust fund," either individually or jointly with others; copies of any intangible tax returns filed by him, either individually or jointly with others, for the years 1986 through 1989; the contents of any safe deposit boxes maintained by him, either individually or jointly with others, as of the date of the service of the complaint; any "personal financial and/or net worth statements" submitted by him to any bank from 1986 to the present; all documents and/or letters received by him from 1986 to the present "from any real estate agent, attorney, accountant, bank officer, stock broker, or any other person," notifying him of his interest in any corporation, trust, reversionary interest, or in any real or personal property"; all insurance policies on his life; and all "evidence of income from and interest in Social Security, retirement plans and pensions."

The applicant objected to this request for production on the grounds that it sought information which was "irrelevant and immaterial to the issues in th[e] case" and was intended to "harass, burden or otherwise embarrass [him] both prior to and during the trial." However, the trial court granted a motion by the appellee to compel responses to it. The case is currently before us on interlocutory appeal

from that ruling. *Held*:

In concluding that the requested items were discoverable, the trial court relied on footnote 13 of *Hospital Auth. of Gwinnett County v. Jones*, 259 Ga. 759, 764 (386 SE2d 120) (1989), wherein the Supreme Court stated that "[u]nder the [Tort Reform Act of 1987], Ga. L. 1987, p. 915, evidence of the financial circumstances of the defendant may be admissible" on the issue of punitive damages. Prior to the enactment of the Tort Reform Act of 1987, juries were not allowed to consider evidence of the defendant's financial worth in assessing punitive damages for deterrence pursuant to OCGA § 51-12-5 but were allowed to consider such evidence in tort actions filed pursuant to OCGA § 51-12-6, "in which the entire injury is to the peace, happiness, or feeling of the plaintiff." See *Bob Maddox Dodge v. McKie*, 155 Ga. App. 263, 264 (3) (270 SE2d 690) (1980); *Hodges v. Youmans*, 129 Ga. App. 481, 486 (200 SE2d 157) (1973). The reason such evidence was admissible in actions filed pursuant to OCGA § 51-12-6 was that this Code section specified that "the worldly circumstances of the parties" was a factor to be weighed in such actions. However, the 1987 Act deleted this language and rewrote § 51-12-6 to specify that punitive damages are not recoverable in such actions. Ga. L. 1987, pp. 919-920.

The 1987 Act also created a new OCGA § 51-12-5.1, governing the assessment of punitive damages in tort actions generally. That Code section provides, in pertinent part, as follows: "(c) Punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant. (d) (1) An award of punitive damages must be specifically prayed for in a complaint. In any case in which punitive damages are claimed, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made. This finding shall be made specially through an appropriate form of verdict, along with the other required findings. (2) If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive *such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case.* It shall then be the duty of the trier of fact to set the amount to be awarded. . . ." (Emphasis supplied.)

In footnote 13 of *Hospital Auth. of Gwinnett County v. Jones*, supra, the Supreme Court expanded upon this language as follows: "Since the standard for measuring damages is judicially created, . . . we recommend that trial courts, even under the new statute, . . . consider charging the jury on the factors appropriate to the verdict. Such factors may include: (1) the nature and egregiousness of the defendant's conduct; (2) the extent and duration of the defendant's wrong-

doing and the possibility of its recurrence; (3) the intent of the defendant in committing the wrong; (4) the profitability of the defendant's wrongdoing; (5) the amount of actual damages awarded; (6) previous awards of punitive damages against the defendant; (7) potential or prior criminal sanctions against the defendant based upon the same wrongful acts; and (8) any other pertinent circumstances. [Cit.] *Under the new law, Ga. L. 1987, p. 915, evidence of the financial circumstances of the defendant may be admissible.*" (Emphasis supplied.) Id. at 764.

Since evidence of the defendant's financial circumstances "may" be admissible under the 1987 statute after a jury has determined that punitive damages are to be awarded, it necessarily follows that evidence of the defendant's financial condition "may" be discoverable by the plaintiff in cases where punitive damages are sought. See generally OCGA § 9-11-26 (b) (1). However, the potential for abuse created by such a discovery right is obvious. Indeed, it is conceivable that an unscrupulous plaintiff might use the threat of such discovery to extort an unwarranted settlement from a defendant. Recognizing the potential for such abuse, this court has previously indicated that a trial court may refuse to enforce such a discovery request where it appears "more calculated to burden the [defendants] than . . . to lead to admissible evidence." *Mitzner v. Hyman,* 175 Ga. App. 311, 313 (333 SE2d 182) (1985). That concern obviously is present in the present case, since a more intrusive and burdensome discovery request than the one filed by the appellee is scarcely imaginable.

In balancing the plaintiff's right of discovery against the defendant's right to privacy in such cases, the majority of those jurisdictions which has considered the issue has been unwilling to permit discovery of the defendant's financial condition based on the plaintiff's mere allegation that he is liable for punitive damages but has instead required the plaintiff to make a prima facie showing of the facts giving rise to such liability. See *Gierman v. Toman,* 185 A2d 241, 244 (N.J. Super. 1962); *Rupert v. Sellers,* 368 NYS2d 904 (App. Div. 1975); *Cox v. Theus,* 569 P2d 447 (Okla. 1977); *Leidholt v. Dist. Ct. of Denver,* 619 P2d 768 (Colo. 1980); *Campen v. Stone,* 635 P2d 1121, 1132 (Wyo. 1981); *Bryan v. Thos. Best & Sons,* 453 A2d 107 (Del. 1982); *Larriva v. Montiel,* 691 P2d 735, 738 (Ariz. 1984). See generally Anno.: Necessity of Determination or Showing of Liability for Punitive Damages Before Discovery or Reception of Evidence of Defendant's Wealth, 32 ALR4th 432. Moreover, even in those jurisdictions where no absolute requirement has been imposed to this effect, it has been held that the trial courts nevertheless have the authority to consider whether an evidentiary basis exists for the punitive damage claim before compelling responses to such discovery. See *Tennant v. Charlton,* 377 S2d 1169 (Fla. 1979); *Cobb v. Super. Ct. of Los Angeles*

*County*, 160 Cal. Rptr. 561 (Cal. App. 1979). Also, it has been held almost uniformly that where pre-trial discovery of the defendant's financial resources is authorized, the scope of such should be restricted to the extent necessary to prevent an unreasonable intrusion into the defendant's privacy. See *Rupert v. Sellers*, supra, 368 NYS2d at 913; *Leidholt v. Dist. Ct. of Denver*, supra, 619 P2d at 771-772; *Gierman v. Toman*, supra, 185 A2d at 244; *Cobb v. Super. Ct. of Los Angeles County*, 160 Cal. Rptr., supra. Accord *Borenstein v. Blumenfeld*, 151 Ga. App. 420, 421 (260 SE2d 377) (1979) (holding, in a case where punitive damages were not at issue but where the appellant's financial condition was nevertheless arguably relevant, that the interests of justice did not require the appellant to produce his federal income tax returns).

In accordance with the pronounced trend established by the foregoing authorities, we hold that the appellee in this case was not entitled to discover information concerning the appellant's personal financial resources absent an evidentiary showing (by affidavit, discovery responses, or otherwise) that a factual basis existed for her punitive damage claim. Additionally, we hold that the request for production submitted by the appellee in this case was so manifestly burdensome and oppressive that the trial court would not have been authorized to compel responses to it even had such an evidentiary showing been made.

*Judgment reversed. Birdsong, P. J., and Cooper, J., concur.*

DECIDED MARCH 4, 1991 —
REHEARING DENIED MARCH 14, 1991 —

*Newton, Smith, Durden & Kaufold, Wilson R. Smith*, for appellant.

*Lissner, Killian, Cunningham & Zacker, Robert P. Killian, Alan P. Layne*, for appellee.