## A95A2861. APPLE INVESTMENT PROPERTIES, INC.
### v. WATTS.
(469 SE2d 356)

BEASLEY, Chief Judge.

Watts sued Apple Investment Properties, Inc., which operates a personal care home called Bayberry Trace Personal Care Home. Watts is administrator of the estate of her father, William Harrison, who suffered from Alzheimer's disease and lived at Bayberry Trace before his death. The suit alleges that in November 1991 Mr. Harrison wandered unsupervised into the cold, that a passer-by found him, lying on the ground wearing only his underwear, and that he had to be hospitalized for hypothermia. Watts claims compensatory and punitive damages due to negligent supervision.

During discovery, Watts sought to obtain records of incidents and accidents involving other residents which Apple was required by law to make and keep in the residents' files. Pursuant to OCGA § 9-11-34, she served on Apple requests for: a copy of each and every record maintained by defendant of any case of an accident or sudden adverse change in the health of any resident of Bayberry Trace for the period from January 1, 1991 through December 1, 1991, said records being required by 290-5-35-.10 (1) of the Rules of the Department of Human Resources, a copy of the investigation report initiated by defendant's manager relating to any incident concerning any resident of Bayberry Trace for the period from January 1, 1991 through December 1, 1991, said records being required by DHR Rule 290-5-35-.10 (3).

Copies of these requests are not in the record, but counsel agree on their language. Our ability to properly review these matters is hindered and slowed when the parties fail to ensure the record is complete and fail to cite to the record in their briefs, as required by Court of Appeals Rule 27 (c) (3).

The requests prompted Apple to file a motion for protective order contending 1) the records were not relevant and 2) it could not produce the records pursuant to DHR Rule 290-5-35-.08 (h), which required Apple to guarantee to its residents the right to "confidential treatment of personal information in [their] files as provided in Rule 290-5-35-.05 (1). . . ."[1] The latter provided that "personal information [in a resident's files] shall be treated as confidential and shall not be disclosed except to the resident and his sponsor, the management, the licensing agency and others for whom written authorization is given by the resident or his sponsor." DHR Rule 290-5-35-.05 (1).[2]

---

[1] This regulation was repealed effective November 1993; it was replaced by a nearly identical provision, DHR Rule 290-5-35-.18 (r), which is currently in effect.

[2] Repealed effective November 11, 1993; replaced with nearly identical language cur-

These regulations were issued pursuant to state law. OCGA §§ 31-7-12 (b), 31-8-133.

In a well-reasoned opinion, the trial court denied the protective order and required production of the reports. We agreed to hear Apple's interlocutory appeal on this issue, OCGA § 5-6-34 (b), and affirm the trial court's decision.

1. The trial court properly found these records to be relevant, ruling that "[e]vidence concerning the extent of similar conduct would be highly relevant concerning the true scope of the problem and the extent to which punitive damages might be required to punish or deter." The Civil Practice Act contemplates full investigation, allowing discovery of "any matter, not privileged, which is relevant [and] . . . reasonably calculated to lead to the discovery of admissible evidence." OCGA § 9-11-26 (b) (1); *Bullard v. Ewing*, 158 Ga. App. 287, 291 (279 SE2d 737) (1981). The trial courts have broad discretion to determine what is and what is not discoverable, and this court will not interfere with those decisions absent a clear abuse. *Mixon v. City of Warner Robins*, 214 Ga. App. 519 (2) (448 SE2d 377) (1994); *Tandy Corp. v. McCrimmon*, 183 Ga. App. 744, 745 (1) (360 SE2d 70) (1987).

The mission of a personal care home such as Bayberry Trace is to provide "protective care and watchful oversight of a resident who needs a watchful environment. . . . Protective care and watchful oversight includes but is not necessarily limited to a daily awareness by the management of the resident's functioning, his or her whereabouts, . . . with a 24-hour responsibility for the well-being of the resident." DHR Rule 290-5-35-.01 (b).[3] And again, "[t]he personal care shall include 24-hour responsibility for the well-being of the residents." DHR Rule 290-5-35-.03 (2).[4]

Watts alleged Apple did not properly supervise Mr. Harrison, who suffered from a disease which required that he be given special care and structural supervision. Watts sought these reports to determine if Apple's employees had failed to monitor other residents, as other similar instances of conduct would tend to support a claim that Apple was, as alleged, "consciously indifferent" to the needs of its residents so as to justify punitive damages. The principle that similar acts may be admitted during the punitive damages portion of a trial to show a pattern of misconduct is well established. *Holt v. Grinnell*, 212 Ga. App. 520, 521-522 (441 SE2d 874) (1994). "[T]he extent of the defendant's wilful misconduct, wantonness, and entire want of

---

rently found at DHR Rule 290-5-35-.17.

[3] Repealed effective November 11, 1993. It is now found at DHR Rule 290-5-35.12 (1).

[4] Repealed effective November 11, 1993; similar language found at DHR Rule 290-5-35.12 (1).

care in [supervising its residents] cannot be gauged solely by focusing on the incident in issue." Id. In *Gunthorpe v. Daniels*, 150 Ga. App. 113, 114-115 (3) (257 SE2d 199) (1979), we allowed a plaintiff accusing her orthodontist of malpractice to introduce evidence of similar treatment he gave other patients. Similar acts evidence likewise might also show Apple "knew that such carelessness on [its] part in the past had resulted in similar injuries to others but continued in this course of conduct in utter indifference to the consequences. . . ." Id.

Evidence of similar incidents might also be admissible in the liability portion of this trial, as Watts contends. Evidence of prior similar accidents could show Apple had notice its employees were not properly supervising residents or that residents were finding a way out of the facility; it could also rebut a claim by Apple that it was unaware of such problems. *Gunthorpe*, supra at 114-115 (2), (3).

2. If these documents are relevant, as the trial court determined, do the DHR regulations Apple cites prohibit their discovery as privileged? No. The confidentiality rule is an agency rule which, although enacted under authority granted by the legislature, must yield to a law of general application. *Ga. Hosp. Assn. v. Ledbetter*, 260 Ga. 477, 479 (4) (396 SE2d 488) (1990) (Open Records Act trumps agency confidentiality rule). The Civil Practice Act allows discovery of any relevant matter which is not privileged. OCGA § 9-11-26 (b). Although Apple cites the physician shield statute, OCGA § 24-9-40, to argue that these records constitute confidential "medical" information, that statute even if applicable allows release of such information pursuant to a court order. Its companion statutes, OCGA §§ 24-9-41 and 24-9-42, contemplate the release of "medical information" from long-term care facilities. See also OCGA § 37-3-166 (a) (8), allowing disclosure of mental health records pursuant to a subpoena, and OCGA § 37-4-125 (a) (8), allowing similar disclosure of mental retardation records. These statutes, allowing disclosure under aegis of judicial oversight, overcome the DHR's confidentiality regulations.

Apple did not meet its burden of showing a basis for compelling a protective order as a matter of law. *Young v. Jones*, 149 Ga. App. 819, 824 (4) (256 SE2d 58) (1979). Furthermore, the regulations prohibit only disclosure of "personal information" regarding residents. The reports contain accounts of events, incidents, and accidents at Bayberry Trace, not strictly "personal information" about each patient as is called for in DHR Rule 290-5-35-.05 (2).[5] The DHR required Apple to keep the reports at issue so the Department could inspect and, if necessary, investigate conditions at the home. OCGA § 31-7-12. As the

---

[5] Repealed effective November 11, 1993; similar language now found at DHR Rule 290-5-35.17 (2).

trial court noted, "[i]t would be strange, indeed, for the Department of Human Resources to create a regulation which would have the effect of concealing the very types of misconduct which the Department exists to eradicate."

3. In affirming the trial court's decision, we confirm the importance of protecting residents' privacy rights. "[T]he potential for abuse created by . . . a discovery right is obvious," and the court must "balanc[e] the plaintiff's right of discovery against the defendant's right to privacy." *Holman v. Burgess*, 199 Ga. App. 61, 63 (404 SE2d 144) (1991); *A Southern Outdoor Promotions v. Nat. Banner*, 215 Ga. App. 133, 134 (3) (449 SE2d 684) (1994). See also *In re Callaway*, 212 Ga. App. 500, 501 (442 SE2d 309) (1994). Here, of course, it is not even defendant's right that is at issue. It is the rights of unidentified third persons who, like plaintiff's decedent, are or were residents of Bayberry Trace. They are not involved in this litigation and thus are not being heard on the matter. The one who is championing their privacy right would gain by its protection, even more so if it hid acts of negligence against any of those same persons.

We also recognize, in striking the balance, that there is no direct quid pro quo here; disclosure, if it yields similar incidents of negligence, would redound to the benefit of plaintiff alone, in that any punitive damages would not be shared by the injured third parties. The broader aspect is that it is in the public interest to deter future "conscious disregard for the consequences" of failing to provide the degree of personal care called for under the law, as alleged by plaintiff.

To protect the residents' privacy, the court has power to conduct in camera reviews and to fashion orders limiting the use of and the dissemination of records. OCGA § 9-11-26 (c); see *Goldstein v. Goldstein*, 262 Ga. 136, 137-138 (414 SE2d 474) (1992) (Hunt, J., dissenting). The record does not reflect Apple requested any such limitation.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 16, 1996.

*Sullivan, Hall, Booth & Smith, John E. Hall, Jr., T. Andrew Graham*, for appellant.
*Renehan & Moody, Edward G. Renehan, Hyatt & Hyatt, John M. Hyatt*, for appellee.